IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JETAVIAN BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 1:16-cv-913-MHT-TFM |
| | ) | |
| CITY OF DOTHAN, ALABAMA, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.      INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 alleging that his constitutional rights were violated when the Defendants used excessive force against him during his arrest and also subjected him to an unlawful search by conducting a body cavity/strip search of him in the parking lot where he was arrested.   He also alleges a state law claim for assault resulting from the Defendants' actions during his arrest.  He sues the City of Dothan, a municipal corporation, the Chief of Police, Steve Parrish, and police officers Robert Cole, Thomas Davis, Matt Krabbe, and David Saxon (collectively "the Defendant Officers").   He sues the Chief of Police and Defendant Officers in their individual capacities.  (Doc. 29, Plaintiff's Second Amended Complaint).  Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law.  (Doc. 21).

Now pending before the Court are Defendants City of Dothan and Steve Parrish's Motion for Summary Judgment (Doc. 42), Supporting Brief (Doc. 43), and Defendants Robert Cole, Thomas Davis, Matt Krabbe, and David Saxon's (collectively "the Defendant Officers") Motion for Summary Judgment (Doc. 44), Supporting Brief and Evidentiary Filings (Doc. 45) and Plaintiff's Responses to the Motions including Evidentiary Filings (Docs. 51 and 52) and the Defendant Officers' Reply Brief (Doc. 55). The Court has carefully reviewed the motions for summary judgment, the briefs filed in support of and in opposition to the motions, and the supporting and opposing evidentiary materials. For good cause, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant City of Dothan and Steve Parrish's Motion for Summary Judgment (Doc. 42) be **GRANTED** and that the Defendant Officers' Motion for Summary Judgment (Doc. 44) be **GRANTED** in part and **DENIED** in part.

## II.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace*

*Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).  The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial.  *Id.*  To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law.  *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987).  It is substantive law that identifies those facts which are material on motions for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues.  All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant.  *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

### III.    FACTUAL HISTORY

The facts of this matter are largely in dispute.  The law is clear; this Court must take the evidence in the light most favorable to the nonmovant.  *Early,* 907 F. 2d. at 1080. Indeed, the United States Supreme Court has recently reaffirmed this principle in precisely the same factual context as the instant action. *See, Tolan v. Cotton,* 134 S.Ct 1861(2014)(Vacating and remanding Fifth Circuit's opinion affirming grant of summary judgment against Plaintiff suspect in a § 1983 action brought against Defendant police officer alleging the use of excessive force in violation of the Fourth Amendment.).  Thus, while the statement of facts in this opinion may not ultimately be the facts proven at trial, the Court must and has drawn all inferences in favor of Bryant for purposes of deciding Defendants' Motions for Summary Judgment.  In sum, the Court, as it is required to do, has accepted Bryant's version of the facts as testified to by him at deposition and in his affidavit and leaves credibility determinations to the jury.  *See Strickland v. Norfolk Southern Ry. Co.,* 692 F. 3d 1151, 1162 (11th Cir. 2012) ("Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper.").

It is undisputed that on November 21, 2014, Dothan police officers Matthew Krabbe, Thomas Davis, David Saxon, Robert Cole ("the Defendant officers") and Jonathan Godwin were conducting surveillance in the parking lot of the Crossings Apartments in Dothan, Alabama.  Officer Krabbe had received information from a confidential informant that Jetavian Bryant would be traveling to these apartments on this date in a newer model, silver, Lexus vehicle and have in his possession methamphetamine.  Officer Krabbe had

relayed this information to the other officers. (Doc. 45; Krabbe Affid. Ex. A, Davis Affid. Ex. B, Saxon Affid. Ex. C, Cole Affid. Ex. D, Godwin Affid. Ex. E).  About 1:00 p.m. a silver, newer model Lexus drove into the parking lot carrying Bryant whom the officers recognized.  After the Lexus parked, the five officers approached on foot.  Bryant was seated in the right rear passenger seat behind a female who was seated in the front passenger seat.  Another female sat in the driver's seat. (Doc. 45; Krabbe Affid. Ex. A).  From this point the Plaintiff's and Defendants' versions of fact sharply diverge.

The Defendant officers claim that as they approached the car, Bryant, who was seated in the backseat of the car, was seen making suspicious movements with his hands. (Doc. 45; Krabbe Affid. Ex. A; Davis Affid. Ex.B). They further claim that as Officer Krabbe opened Bryant's car door, Officer Saxon, who saw Bryant holding a handgun, yelled "that he had a gun".  (Doc. 45; Saxon Affid. Ex C at p. 3).   Next, the officers "pull him and he stands up" to get out of the vehicle.  (Doc. 51; Krabbe Depo. Ex. 3 at pp. 49:16-20).  The officers claim, however, that Bryant resisted giving them control of his hands and he "pulled his hands away from us."  (Doc. 51; Krabbe Depo. Ex. 3 at pp. 50-51:14-16).

Bryant, however, testified at deposition that as the officers approached the vehicle, he put the gun on the floorboard of the car and exited the car, turning his body towards the car and placing both of his hands on top of the roof of the car.  (Doc. 51; Bryant Depo. Ex. 1 at pp. 58-61).  He further stated in his Affidavit that "[a]t no time did I resist arrest." (Doc. 51; Bryant Affid. Ex 9 at p. 1).  Specifically, he stated that as he got out of his car, the officers exited their cars and were running toward him.  (Doc. 51; Bryant Depo.  Ex. 1

at pp. 61:15-18; 63:7-14).  He further testified that the officers did not say anything and gave no commands; and even though he was "already in surrender mode", they ran up to him and started punching and hitting him.  (Doc. 51; Bryant Depo. Ex. 1 at p. 62:9-11; Bryant Affid. Ex.9).

Bryant never testified at deposition what he did with his hands after the put them on the car.  He did testify, however, that he could not count how many times the officers punched him while "yelling hit him with the gun, hit him with the flashlight, knock him out. All that shit, and give me your hands at the same time."   (Doc. 51; Bryant Depo. Ex. 1 at p. 65:9-12).  This testimony is in direct conflict with Plaintiff's preceding testimony that the officers did not say anything to him.  Further, this testimony is the only time Plaintiff testified about the state of his hands following his placing them on the car.

To the contrary, Officer Krabbe testified that he got out of his car and approached the passenger side of Bryant's vehicle.  He opened the backdoor to Bryant's vehicle and when he heard Saxon yell gun, Krabbe grabbed both of Bryant's hands. (Doc. 51; Krabbe Depo. Ex. 3 at pp. 42-45.)  At no time did Officer Saxon ever inform the other officers that the gun remained in the car.  (Doc. 51, Saxon Depo. Ex. 2 at pp. 44-45).  The officers state that Bryant refused to get out of the car, to get on the ground, to surrender his hands and resisted the officer's efforts to force him to the ground to be hand cuffed.  (Doc. 45; Krabbe Affid. Ex. A; Davis Affid, Ex. B; and Saxon Affid. Ex. C).  Officer Krabbe admits to striking Bryant in his arms in an effort to get his hands cuffed behind his back and he admits

that he "gave him a couple knee strikes, too."  (Doc. 51; Krabbe Depo. Ex. 3 at pp. 53, 56:20-21).

After the officers got Bryant out of the car, Officer Davis testified that while the other officers were trying to get Bryant's hands behind him to be handcuffed, he "grabbed them all and just did a hip toss and then . . . everyone went to the ground at that time." (Doc. 51; Davis Depo. Ex. 4 at pp. 60-61.)  Officer Godwin fell on top of Bryant.  (Doc. 51; Davis Depo. Ex.4 at p. 67).  Officer Godwin admits that in an attempt to get Bryant hand cuffed, he "g[a]ve him a palm heel strike to his left shoulder." (Doc. 51; Godwin Depo. Ex. 5 at p. 26:15-16).  The Defendant officers admit to striking Bryant's body with hands or knees in order to force him to let the officers pull his hands out from under his body. (Doc. 51; Krabbe Depo. Ex. 3 at pp. 61-62, 80; Cole Depo. Ex. 6 at pp. 41, 42; Use of force Report Ex. 7.)  Officer Davis admits that he put his hand on Bryant's head "because he was trying to get up" and "held [his head] against the ground."  (Doc. 51; Davis Depo. Ex. 4 at p. 68:4-5, 65:19).  Bryant claims that while he was on the ground Davis punched and choked him "squeezing my larynx" and "[h]e told me that he was going to kill me." (Doc. 51; Bryant Depo. Ex. 1 at p. 64).

After Bryant was handcuffed, Krabbe patted him down to check for weapons because they still did not know where the gun was.  Then Bryant was placed in the back of the vehicle.  (Doc. 51; Krabbe Depo. Ex. 3 at pp. 62-64).  Bryant told the officers that he threw a brown bag out of the window, so Krabbe and Saxon went to look for it.  (Doc. 51, Bryant Depo. Ex. 1 at p. 75:21-24; Krabbe Depo. Ex. 3 at pp. 64-66; Davis Depo. Ex. 4 at

pp. 80-81; Cole Depo. Ex. 6 at pp. 41-42).   However, one of the women accompanying Bryant in the car told Officer Krabbe that she did not see Bryant throw anything out of the window.   (Doc. 51, Krabbe Depo. Ex. 3 at p. 69:14-18).   After failing to find the brown bag, Davis took Bryant, who was still handcuffed, out of the car and put him on the ground. (Doc. 51; Davis Depo. Ex. 4 at pp. 85-87).    Davis testified that "[b]ased upon [his] experience in narcotics investigations, [he] knew that drug dealers and users like Mr. Bryant often hide their drugs down their pants."  (Doc. 45-7, Davis Affid., Ex. B.)  Davis further testified that he "checked him, patted him down, patted down his groin. . . . he had his pants and his boxers on.  I took his boxers, lifted them up and I could see a plastic bag sticking in between his butt cheeks."  Thereafter, Davis got gloves, and pulled out the bag, which contained narcotics. (Doc. 51; Davis Depo. Ex. 4 at pp. 88-89).   Further Davis testified that he never pulled Bryant's pants down and that during this search the female officers were not nearby.   However, he also testified that a female apartment manager "walked by" during his search of Bryant.  (Doc. 51; Davis Depo. Ex. 4 at pp. 89-90).

To the contrary, Bryant testified that "[t]hey slammed me down and stepped  -- one of them stepped on my face.  One stepped on my back."  (Doc. 51; Bryant Depo. Ex. 1 at pp. 66).  He further claims that Davis "went in my rectum" . . ."with his fingers in my ass" to the retrieve the plastic bag.  (Doc. 51; Bryant Depo. Ex. 1 at pp. 67-68).

The remainder of the facts are not in dispute.  Bryant was transported to the Dothan City Jail and booked for unlawful possession of a controlled substance and possession of marijuana, first degree. (Doc. 45; Krabbe Affid. Ex. A, Davis Affid. Ex. B, Saxon Affid.

Ex. C, Cole Affid. Ex. D.)  Upon making and signing his complaint, Bryant was transported to the Southeast Alabama Medical Center where he arrived at 1700 hours.  (Doc. 45; Krabbe Affid. Ex. A and A-2, Affid. of Custodian of Hospital Records, Ex. F). Bryant claims that he "suffered broken blood vessels in [his] eye, bruises, cuts and soreness." (Doc. 51; Bryant Affid. Ex. 9 at p 2).  He further testified at deposition that "[i]t took [him] about two months for [his] arm and shoulder to heal up and for [him] to lift stuff again." (Doc. 51; Bryant Depo. Ex.1 at p. 73:21-23.  Bryant's x-rays were normal; he was given Anaprox and was discharged at approximately 2000 hours. (Doc. 45; Affid. of Custodian of Hospital Records, Ex. F).  Bryant was returned to the Dothan City Jail.  (Doc. 45; Krabbe Affid. Ex. A-1).  Bryant pleaded guilty to the charges in this case on May 22, 2017.  (Doc. 45; Krabbe Affid. Ex. A-4 and A-5).

## IV. DISCUSSION

### A.  Refining the Causes of Action in the Complaint

The Eleventh Circuit has counseled a factual distinction based upon when the use of force occurred in relationship to when the suspect was handcuffed.  *See Lloyd v. Van Tassell*, 318 Fed. App'x. 755, 758 (11th Cir. 2009)("[F]orce is more likely to be unlawful if it occurred after a suspect was already secured, the arrest effected, and danger vitiated, as opposed to force that occurred while the officer was still securing a suspect.") citing *Lee v. Ferraro*, 284 F. 3d 1188, 1199-1200 (11th Cir. 2002).  Thus, for the purposes of this opinion, the Court will evaluate Plaintiff's claims in the context of this factual distinction. Indeed, Plaintiff alleges multiple claims arising from two distinct factual scenarios

involving allegations of excessive force and an unreasonable body cavity search.  The first scenario began when the Officers approached Bryant's car and ended once Bryant was placed in handcuffs.  The second scenario began when Officer Davis removed Bryant, who was subdued and in handcuffs, from the police car and allegedly conducted a body cavity search on Plaintiff to locate the drugs.  (Doc. 29).

Count I[1] alleges that the Defendant Officers were deliberately indifferent to the Plaintiff's constitutional rights to be free from excessive force during an arrest based upon the Defendant Officer's "unofficial practice" of using excessive force and the customs and policies concerning training.  (Doc. 29 at p. 6)  Plaintiff admits that summary judgment is due to be granted on this claim against the City of Dothan and Steve Parrish.  As a result, the Court understands this claim to be one for excessive force against the Defendant Officers based upon an "unofficial practice" and as such it is essentially a general statement of the more specific allegations contained in Claims II, III and IV, which all raise Fourth Amendment excessive force claims brought pursuant to 42 U.S.C. § 1983.

Count II alleges that Defendant Davis violated Bryant's Fourth Amendment rights to be free from an unlawful search and seizure when he conducted the strip search and body cavity search of Plaintiff.   Count III[2] alleges that Defendant Officers violated Bryant's

---

[1]   Plaintiff admits in his Response to the Motion for Summary Judgment filed by the City of Dothan and Steve Parrish that he can not meet his burden on his claims for failure to provide training as to Counts 1, 6, 7, 8 and 10 and that summary judgment is due to be granted in favor of the City of Dothan and Steve Parrish on these claims. (Doc. 52).

[2]   In Count III, Plaintiff also seeks to state a claim for excessive force premised upon the Fourteenth Amendment.   The Court concludes that any Fourteenth Amendment substantive due process claim based upon excessive force fails because the United States Supreme Court has directed that "the Fourth Amendment, not the Fourteenth, should be exclusively used to evaluate pre-arrest excessive

Fourth Amendment rights to be free from excessive force. Count IV alleges that Defendants Krabbe, Saxon, and Cole violated Bryant's Fourth Amendment rights by failing to prevent excessive and unreasonable force during the arrest.

Counts V, VI, VII, VIII and X allege claims only against Defendants City of Dothan and Chief of Police Parrish. Since Plaintiff has specifically conceded summary judgment is due to be granted on Counts VI, VII, VIII and X against the City of Dothan and Defendant Parrish, (Doc. 52), the Court concludes that summary judgment is due to be entered on these claims and these claims dismissed in full. The Court notes that Plaintiff does not specifically list Count V in the claims where he agrees summary judgment is due to be entered. However, Count V, like the other claims, is a claim brought solely against the City of Dothan and Defendant Parrish. Based on Plaintiff's Response to the Defendants' City of Dothan and Steve Parrish wherein he offers no argument against summary judgment on Count V and concedes all other claims against these Defendants are due to be dismissed, (Doc. 52), the Court concludes summary judgment is also due to be entered on Count V. *See A.L v. Jackson County School Bd.*, 635 Fed. App'x. 774, 787 (11th Cir. 2015) ("Appellants waived their claims by failing to brief them, failing to respond to the Board's motion for summary judgment.")

Count IX alleges state law claims for assault and battery/intentional infliction of emotional distress against Defendants Davis, Krabbe, Saxon, and Cole. However, Plaintiff provides argument in his Response to the Defendant Officers' Motion for Summary

---

force cases. *See Jones v. Flathmann*, 2008 WL 918702 *4 (M.D. Ala. 2008) citing *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Judgment solely as to the claim for assault.  Accordingly, the Court concludes that Plaintiff has waived any other state law claims that he may have attempted to bring in his Second Amended Complaint.  (Doc. 29).  *See A.L*, 635 Fed. App'x at 787.  The Defendants argue that Bryant is collaterally estopped from raising these claims and that state law immunity requires summary judgment be entered on the assault claim.

### B.  Claims for Excessive Force – Counts I, II, and III

The Defendant Officers argue that summary judgment is due to be granted on claims I, II, and III because (1) Bryant can not establish a violation of his Fourth Amendment rights under *Graham v. Conner,* 490 U.S. 386 (1989); (2) there was only a de minimus amount of force and injury;  and (3) the Defendant Officers are entitled to qualified immunity.

At the outset the Court recognizes the Eleventh Circuit has clearly stated that "[a] law enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest."  *Brown v. City of Huntsville,* 608 F.3d 724, 740 (11th Cir. 2010) (Officer's conduct in forcibly removing Plaintiff from car would not support a claim for excessive force).  In determining what constitutes excessive force, the United States Supreme Court has counseled a reasonableness standard.  *Graham,* 490 U.S. at 396. Indeed, the *Graham* Court stated that the proper application of the reasonableness inquiry

> "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Id.* Defendant Officers argue that because Plaintiff suffered only a de minimus amount of injury, this Court should conclude that the force used was objectively reasonable. The Eleventh Circuit has made clear that "a minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case." *See Nolin v. Isbell,* 207 F. 3d 1253, 1258 (11th Cir. 2000)(Reversing the district court's denial of summary judgment for Defendant officer on the basis that de minimis force will not support a claim for excessive force under the Fourth Amendment).

However, the Eleventh Circuit has explained that "the relationship between the need and the amount of force used, and the extent of the injury inflicted" is a factor to be considered in making the "objectively reasonable" determination but is not "determinative". *Lloyd,* 318 Fed. App'x at 757-58 citing *Lee,* 284 F. 3d 1198. Indeed, the Eleventh Circuit further explained

> "[t]he extent of the injury is not determinative, because reasonable force does not become excessive merely because it aggravates a pre-exiting condition of which the officer was unaware. *Lee,* 284 F. 3d at 1200. Conversely, *objectively unreasonable force does not become reasonable or de minimis merely because the plaintiff only suffered minimal harm. Id.*"

*Lloyd,* 318 Fed. App'x at 758. (Emphasis added). Thus, the Court will consider the amount of Plaintiff's injury as a factor to be considered alongside the *Graham* factors in determining whether the force used in this case was excessive. To do so, the Court must consider these factors in the context of the Defendant Officer's argument that they are entitled to qualified immunity.

The United States Supreme Court has counseled that resolution of the qualified immunity involves a two-part inquiry.

> The first asks whether the facts '[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a [federal] right[.]'   . . . The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation.

*Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014).  There is no question that at the time of Bryant's arrest, November 21, 2014, the Eleventh Circuit had made clear "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *See Hadley v. Gutierrez,* 526 F. 3d 1324, 1330 (11th Cir. 2008).  Thus, the question upon which this Court will focus its attention is whether taking the facts in the most favorable light to Bryant, the Defendant Officers' conduct violated *Graham,* 490 U.S. 386 (1989). With this background in mind, the Court now turns its attention to Bryant's specific claims of excessive force which the Court will view in two parts – (1) the actions of the officers *before* Bryant was handcuffed and (2) the actions of the officers *after* Bryant was handcuffed.

**1.   Events Before Bryant was Handcuffed.**

As this Court has previously noted, the Defendant Officers' testimony of the events occurring before Bryant is handcuffed differ sharply from Bryant's own testimony.  This Court may not resolve genuine issues of material fact in favor of the Officers nor can it make credibility determinations on summary judgment, *see Tolan*, 134 S.Ct. at 1866; thus, the Court must accept Bryant's version of the facts.   Bryant testified at deposition that he was parked in the parking lot of the Crossings Apartments in Dothan, Alabama in a silver

Lexis with two women.  He was seated in the backseat on the passenger side and admits that he was there to sell drugs. He stated that he was carrying the drugs in his rectum and he had a gun.  When he saw the police pull in behind him and before they had gotten out of their cars and reached him, he put the gun on the passenger side floor board of the Lexis. Then he got out of the car and put his hands on the top of the car.   Specifically, he testified at deposition as follows:

> A.  When I seen the cops pull up, I put it [the gun]on the floor . . .I just
>      put it on the floorboard of the car and I exited the car.
> . . . .
> Q.  And you said you removed the gun.  Where in the floorboard did
> you place it?
> A.  On the passenger side floorboard.
> . . .
> A.  And I exited out the passenger back door.
> . . .
> Q.  When you say you removed the gun from your pocket and put it
> on the floorboard, where exactly were the police at that time?
> A.  They were pulling in.
>  . . .
> Q.  All right.  And you said they were pulling in.  How far away from,
> I guess, where you saw them pulling in were you?
> A.  Probably about to my vehicle right there.
> Q.  So what's that, 40 or 50 feet?
> A.  I guess.
> . . .
> Q.  When you went to put the gun on the floor, had they gotten out of
> their vehicles yet?
> A.  Uh-uh
> Q.  All right.  And what did you do after you put the gun on the floor?
> A.  I exited the car.  I turned by body towards the car and put my hands
> on top of the roof as in to give up, you know surrender.
> Q.  And at the time you got out of the car where were the officers?
> A.  They were running – they was coming from out of their car
> running towards me.
> Q.  Okay. Like how close had they gotten?
> . . .

> Q.  Halfway, a little closer than halfway?
> A.  What are you talking about?
> Q.  From the vehicle?
> A.  Yeah.  A little closer than halfway.
>   . . .
> Q.  Did you ever hear the officers say anything about seeing the gun?
> A.  No.  They didn't see a gun.  They didn't say anything at all.  They just ran up to me and started punching on me immediately, no put your hands up – I was already in surrender mode.  They just started hitting me.
> Q.  So before – they never said anything before they started hitting you?
> A.  They never said nothing.

(Doc. 51; Bryant Depo.  Ex. 1 at pp. 58:3-62:15).

To the contrary, the Defendant Officers testified that they struck Plaintiff in the arm, forearm, knee and shoulder in an effort to get Plaintiff's hands behind his back to be hand cuffed.  Also, prior to Plaintiff being handcuffed, Officer Davis grabbed the group and threw them all to the ground.  Plaintiff testified about that occurrence as follows:

> Q.  Now, at some point, were you put on the ground?
> A.  Yeah.  I was slammed to the ground.
>   . . .
> A.  When I hit the ground, Thomas Davis started choking me with his two fingers right here on my larynx squeezing and busted two blood vessels in my eye . . . while saying he was going to kill me today.
> Q.  These punches, was that all before you got handcuffed?
> A.  Yeah.

(Doc. 51; Bryant Depo.  Ex. 1 at pp. 65:13-66:4).  Once Plaintiff was handcuffed, he was placed in the back of the police car while the officers interviewed the two women and looked for the drugs that Bryant said he had thrown out the window of the car.

In applying the *Graham* factors, the Court must accept Plaintiff's version of facts.  On the basis of his deposition testimony and affidavit, Bryant contends that prior to being

handcuffed he offered no resistance.  To determine whether the force used was objectively unreasonable, the Court must consider these circumstances from the perspective of a reasonable officer on the scene applying the factors as follows:

> severity of the crime, whether the suspected poses an immediate threat to safety, whether he is actively resisting or attempting to evade arrest, the need for the application of force and the relationship between the need and amount of force used.

*Mobley v. Palm Beach County Sheriff Dept.*, 783 F. 3d 1347, 1355 (11th Cir. 2015) citing *Graham,* 490 U.S. at 396.

First, the Court considers that the crimes of unlawful possession of a controlled substance and possession of marijuana in the first degree, to which Plaintiff plead guilty, were committed while in the possession of a handgun.  The Court also considers Plaintiff's testimony as to the position of the gun and the Officers and his statement that the Officers did not see the gun prior to assaulting him.  However, Officer Saxon testified that he yelled gun and the other officers testified that they did not know where the gun was as they were attempting to secure Plaintiff's hands.  Thus, the Court concludes that there is a question of fact concerning whether Plaintiff presented a threat via the gun to the arresting officers.

Next, the Court considers Plaintiff's version of facts that he got out of the car, turned his body to the car, and placed his hands on the top of the car in considering whether he personally posed a threat to safety or was actively resisting or attempting to evade arrest. The Court recognizes if a jury were to credit Plaintiff's testimony, there is a question of fact concerning the amount of force used in light of his testimony that he offered no resistance, created no threat to safety of the officers and did not attempt to flee.  *See Hadley,*

526 F. 3d at 1330 ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force.").

Further, *Graham* requires that the Court must consider the need for the force in relationship to the force used. Again, the evidence is in conflict. The Officers state that they struck Plaintiff while trying to secure his hands and were concerned about the location of the gun at that time. However, Plaintiff testified that he surrendered his hands by putting them on top of the car and that the Officers gave him no commands about what to do with his hands. Finally, the Court recognizes that although Plaintiff's injuries were minimal – broken blood vessels in his eye, bruises, cuts and soreness – Plaintiff testified that "[i]t took [him about two months for [his] arm and should to hear up and for[him] to lift suff again." (Doc. 51; Bryant Depo. Ex. 1 at p. 73:21-23). Thus, the Court concludes that Plaintiff's testimony is evidence sufficient to create a jury question as to whether the force used in his arrest was objectively unreasonable.

The defendants argue that the Eleventh Circuit has affirmed the rule in *Mobley,* 783 F. 3d 1347*, and *Woodruff v. City of Trussville,* 434 Fed. Appx. 852 (11th Cir. 2011) that de minimus force and injury will not support an excessive force claim and as such summary judgment is due to be granted in favor of Defendants. However, after careful review of these cases, the Court concludes that each is distinguishable on its facts from the instant action. Indeed, in *Mobley* the Plaintiff was being arrested for and was later convicted of assaulting a police officer with a deadly weapon. Most importantly, unlike Bryant in the instant action, Mobley conceded that he refused to surrender his hands. 783 F. 3d at 1356.

Additionally, in *Woodruff,* Plaintiff was pulled from his car after a vehicular chase where he "tried to distance himself from the [police] SUV by passing many cars" on the interstate. 434 Fed. Appx. at 853. Thus, both in *Mobley* and *Woodruff*, the evidence demonstrated that Plaintiff resisted arrest in some fashion. There is no evidence in the case at bar that Plaintiff attempted to flee. Rather in the instant action, there is a question of fact whether Plaintiff resisted by failing to surrender his hands.

The Court views this case as akin to *Smith v. Mattox,* 127 F. 3d 1416 (11th Cir. 1997), where the Court affirmed the trial court's denial of summary judgment on the excessive force claim on the important point that Plaintiff "was offering no resistance *at all*" to having his hands cuffed. *Id* at. 1420. (Emphasis in original). Again, the facts as stated by Bryant in the instant action are sufficient to create a jury question as to whether he surrendered and then was repeatedly punched prior to being handcuffed. Thus, the Court concludes that Defendants' claims of qualified immunity fail as to the events leading to the Plaintiff's excessive force claim prior to him being handcuffed because there is a question of fact as to whether force was excessive based on the facts of this case. Accordingly, the Court concludes Defendants' Motions for Summary Judgment are due to be denied on Plaintiff's excessive force claim as stated in Counts I and III premised on the events occurring prior to him being handcuffed.

**2. Events After Bryant was Handcuffed.**

The events which took place after Bryant was handcuffed are also in dispute. Again

on summary judgment, the Court must refrain from deciding any issues of fact.  *Tolan*, 134

S. Ct. at 1866 and "avoid[] all credibility judgments."  *Smith,* 127 F. 3d at 1417. Plaintiff

testified at deposition as follows:

> Q.  Did they punch you after you were handcuffed?
> A.  The stomped me, stepped on my face.  They stepped on me, stomped on me.
> A.  And  you said you were beaten after you were handcuffed, stomped?
> A.  Stomped, Yeah.  Then they didn't find any drugs.  They put me in the car.  They searched for maybe an hour or 45 minutes and pulled me back out of the car.  They slammed me down and stepped – one of them stepped on my face.  One stepped on by back.  They pulled my pants down and went in my ass.
>  . . .
> Q.  And describe how it came to be that they discovered the bags of drugs in your rectum?
>  . . .
> A. So they searched awhile, and they couldn't find nothing, and then Thomas Davis came and got me out of the car, put me on the ground, one of them stepped on my face against the concrete, one of them stepped on my back and pulled my pants down and went in my rectum.
> Q.  Went in your rectum?
> A.  In my rectum. Degrading me.
> Q.  So how was it – how did he go in your rectum to get the –
> A.  With his fingers in my ass.

(Doc. 51; Bryant Dep. Ex. 1 at pp. 66:8-68:1).  In this context, Plaintiff again raises an

excessive force claim and also a Fourth Amendment claim for an unreasonable body cavity

search.

With respect to the excessive force claim, the Court notes that the Eleventh Circuit

has made clear

> that the point at which a suspect is handcuffed and 'pose[s] no risk of danger to the officer' often is the pivotal point for excessive-force claims.  We have held a number of times that severe force applied *after* the suspect is safely in custody is excessive.

*Mobley,* 783 F. 3d at 1356.  (Emphasis in original)(Citations omitted).  Plaintiff claims that after he was handcuffed, he was slammed to the ground, stomped on in his back and face. Accepting the Plaintiff's testimony as it must for the purpose of summary judgment, the Court considers the *Graham* factors. Here there is no question of fact about whether Plaintiff posed a threat to officers or was actively resisting or attempting to flee.  Instead, Bryant was handcuffed and on the ground.

Again, this Court is persuaded by the facts of *Smith,* 127 F. 3d at 1420 where the Court affirmed the trial court's denial of summary judgment on the excessive force claim because Plaintiff  "was offering no resistance *at all*" while on the ground having his hands cuffed.  The *Smith* Court recognized that it was a close case and that the degree of injury – a broken arm – and Plaintiff's description of the force used nudged it across the line for denying summary judgment.  However, the Court also noted that Smith had resisted arrest prior to the force being applied.  *Id.* 1419-20.  In the instant action, if Plaintiff's testimony is credited, then a jury might conclude that he offered no resistance at all at any time during the arrest.  Therefore, the Court finds that Plaintiff creates a question of fact of whether the force used upon him after he was placed in handcuffs was objectively unreasonable.  Thus, the Court concludes that Defendants' claims of qualified immunity fail as to the events leading to the Plaintiff's excessive force claim after he was handcuffed because there is a question of fact as to whether force was excessive based on the facts of this case. Accordingly, for the same reasons stated above, the Court again concludes that the *Graham* factors counsel against granting summary judgment on Counts I and III.

### 3.   Strip Search and Body Cavity Search

Now the Court will turn its attention to Plaintiff's Fourth Amendment claim based upon an allegedly unreasonable strip search and body cavity search.  To determine whether the search performed on Bryant violated his Fourth Amendment rights, the Court must decide whether the post arrest strip search was "supported by a reasonable suspicion of the existence of drug evidence" and whether the "manner in which th[is] strip search[] w[as] performed was also unreasonable as a matter of federal law."  *Evans v. Stephens*, 407 F. 3d 1272, 1278 (11th Cir. 2005) (Denying summary judgment to Defendant officer on basis of qualified immunity on claims challenging manner of the strip search.) "Whether an officer has a reasonable suspicion is an objective question viewed from the standpoint of a reasonable police officer at the scene."  Id. at 1280.

In the instant action, the evidence demonstrates that the officers had a reasonable suspicion that Bryant was in possession of drug evidence.  First, the officers had received a tip from a confidential informant that Bryant would arrive at the Crossings Apartments in Dothan, Alabama on the date in question in a newer model, silver, Lexus vehicle and have in his possession methamphetamine.  Second, Bryant told the officers that he had thrown the drugs out of the car window, but the two women also in the car with him stated that they did not see Bryant throw anything out of the car.  Third, the officers did not find the drugs when they conducted a search of the surrounding area.  Fourth, Officer Davis testified that based upon his experience, he knew that drug dealers often conceal drugs in their pants.  Because the Court concludes that the Defendant officers had a reasonable

suspicion that Bryant was in possession of drug evidence, the Court turns its attention to the manner in which the search was conducted.

It is undisputed that Officer Davis searched Bryant's pants for drugs at the scene of the arrest in the parking lot of the Crossings Apartments in Dothan, Alabama.  However, Bryant claims that Officer Davis "pulled [his] pants down and went in [his] rectum."  (Doc. 51; Bryant Depo. Ex. 1 at p. 67:19).  Davis testified that the female officers were not nearby during the search, but that the female apartment manager walked by.  In support of his argument that the strip search/body cavity search was unreasonable, Bryant points to General Order 200-60 from the Dothan Police Department.  (Doc. 61-16 pp.6-7)  The General Order provides in pertinent part as follows:

IV.   Strip and Body Cavity Searches
    **A.** General
       1.  This procedure applies to such searches of persons with or without a warrant
       2.  Such searches should take place out-of-sight of unauthorized and/or unnecessary persons.
         . . .
    **B.** Strip Search
       1.  As used in this section, "strip search" mean having a person remove or arrange some or all of his or her clothing so as to permit a visual inspection of the genitals, buttocks, anus, female breasts or undergarments of such person.
         . . .
       3.  Every reasonable attempt will be made to conduct such searches in such a location as to prohibit unauthorized or unnecessary viewing of the search.

    **C.**  Body Cavity Searches
       1.   Body cavity searches will be performed only by medical personnel in a hospital.
       2.  A Body Cavity search may be performed only with the approval of an officer the rank of lieutenant and above.

*See,* General Order 200-60 from the Dothan Police Department.   (Doc. 51-16 pp.6-7).

Bryant argues that the body cavity search Davis conducted on him violated this Order

because it was not performed by medical personnel nor was approval sought and it was

conducted in public in the parking lot of Beverly Crossing Apartment Complex, all in

violation of General Order 200-60.   Indeed, the facts show that at least one female, the

apartment complex manager walked by during the search.

In the instant action, if Plaintiff's testimony is credited, then a jury could conclude

that not only was he strip searched, but that a body cavity search was also performed.   Thus,

accepting Bryant's version of the facts, the Court concludes that Plaintiff creates a question

of fact as to whether the manner in which the searches were conducted was unreasonable

based upon Dothan Police Department policy and current case law.   *See Evans,* 407 F.3d

at 1282 (Constitutional violation was established in context of a strip search based on

physical force, anal penetration, unsanitariness of the process, terrifying language and lack

of privacy). Thus, the Court concludes that Defendant Officer Davis is not qualifiedly

immune from Plaintiff's claims challenging the manner of the search.   Accordingly,

summary judgment is due to be denied on Count II.

### C. Count IV—Liability to Non-intervening Officers

Plaintiff claims that the Defendant Officers violated Plaintiff's Constitutional

rights by failing to prevent the use of excessive force because "[b]ased on the totality of

the testimony there were instances when each Defendant Officer witnessed another

Defendant Officer subject Plaintiff to excessive force."   As support for this claim he cites

24

to General Order 200-10(H) from the Dothan Police Department which states that "[n]o officer shall allow another officer to use force against a person when its use is unjustified". (Doc. 51-13 p.4).   (*See,* Plaintiff's Brief Doc. 51 at p. 29).  Defendant Officers argue that qualified immunity protects them from liability for this claim.

In order to survive summary judgment based on qualified immunity on this claim, Bryant must "present[] evidence from which a reasonable jury could find that  . . . [Defendant Officers] could have anticipated and then stopped" the use of excessive force against him.  *See Hadley,* 526 F. 3d at 1331.  Plaintiff offers no evidence nor any argument on this point.  Accordingly, the Court concludes that the Defendants are entitled to qualified immunity on this claim and that summary judgment is due to be entered on Count IV on this basis.

### D.      Count IX -- State Law Claim for Assault

In order to survive summary judgment on a claim for assault, Plaintiff must demonstrate "(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner."  *Harper v. Winston County,* 892 So. 2d 346, 353 (Ala. 2004).  Defendants argue that because the use of force was not excessive, Plaintiff is collaterally estopped from alleging assault.  However, the Court has concluded that an issue of fact exists precluding summary judgment on Plaintiff's claims for excessive force and unreasonable search. Moreover, Plaintiff has adduced evidence through the deposition testimony of Defendant Officers and Plaintiff which demonstrates that Defendant Officers touched Plaintiff,

intended to touch Plaintiff and that the touching was harmful or offensive.  Accordingly, Defendants' collateral estoppel argument fails.

Next, the defendants argue that Alabama state law immunity requires that summary judgment be entered on Plaintiff's assault claim.  Section 6-5-338 Ala. Code (1975) "shields every defendant who (1) is a 'peace officer', (2) is performing 'law enforcement duties; and (3) is exercising judgment or discretion.  *Ex Parte Dixon*, 55 So. 3d 1171, 1177 (Ala. 2010).  Defendant officers, who were employed by the City of Dothan, as police officers and are sued for their roles in effecting the arrest of Bryant, fall within the category of persons protected by this statute.  Accordingly, the Court concludes Defendant Officers make a prima facie showing that immunity applies.  However, the Alabama Supreme Court has established a burden-shifting rule for application of the state law immunity test.  After the defendant demonstrates that he was acting in a function that would entitle him to immunity, "the burden them shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."  *See Brown v. City of Huntsville*, 608 F. 3d 724, 741 (11th Cir. 2010) citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006).

Construing the facts in the light most favorable to Bryant, Defendant Officers began hitting and punching him after he had voluntarily gotten out of the car and put his hands on top of the car to surrender.  Further, once Bryant was on the ground Officer Davis choked him.  Also, after Bryant was handcuffed, he was slammed to the ground, and stomped on and Officer Davis performed a body cavity search on him.  Accordingly, the

26

Court concludes for the same reasons that Bryant's excessive force claims survive summary judgment, his assault claims also survive summary judgment. Thus, the Court concludes that Defendants' Motion for Summary Judgment is due to be denied on the state law assault claim.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Defendants City of Dothan and Steve Parrish's Motion for Summary Judgment (Doc. 42) be GRANTED on all Claims and that the City of Dothan and Steve Parrish be DISMISSED as parties to this action. It is further the RECOMMENDATION of the Magistrate Judge that the Defendants Robert Cole, Thomas Davis, Matt Krabbe, and David Saxon's Motion for Summary Judgment (Doc. 44) be GRANTED in part and DENIED in part as follows:

1.  Summary Judgment be DENIED as to Plaintiff's Claims for Excessive Force and Unreasonable Search and Seizure, Counts I, II, and III.

2.  Summary Judgment be GRANTED as to Plaintiff's Claims for Liability to Non-intervening Officers, Count IV.

3.  Summary Judgment be GRANTED as to Plaintiff's Claims against the City of Dothan and Defendant Steve Parrish, Counts V, VI, VII, VIII and X.

4.  Summary Judgment be DENIED as to Plaintiff's State Law claim for Assault, Count IX.

It is ORDERED that the Parties shall file any objections to this Recommendation on or before **July 26, 2018.** Any objections filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 12th day of July, 2018.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE